**QUALITY AERO TECHNOLOGY, INC., Plaintiff,**

v.

**TELEMETRIE ELEKTRONIK, GMBH, and General Electric Company, Defendants.**

**No. 5:00–CV–931–BO(3).**

United States District Court, E.D. North Carolina, Western Division.

May 3, 2002.

**314**

James A. Roberts, III, Lewis & Roberts, James T. Johnson, Raleigh, NC, for plaintiff.

L. Neal Ellis, Jr., Hunton & Williams, Raleigh, NC, for defendants.

### ORDER

WEBB, United States Magistrate Judge.

This Cause comes before the Court upon Plaintiff's ("QAT") Motion to Compel Discovery. **(DE 30)**. Defendants Telemetrie Elektronik ("datatel") and General Electric ("GE"), have responded **(DE 33)**, and this matter is now ripe for adjudication.

### BACKGROUND

datatel is a German manufacturer of telemetry equipment for use in measuring the performance of high-speed rotating machinery and engines. GE is a multi-national corporation which, for the purposes of this action, purchased products manufactured by datatel. Plaintiff is a company that provided sales and services in the testing of turbo machinery. In October 1996, datatel and Plaintiff entered into an "Agreement for Exclusive Representation of datatel Products in the USA" (the "Agreement"). Under the terms of the Agreement, datatel and Plaintiff ("the parties") were bound to a term of three years, with automatic renewals for three year periods. According to the Agreement, Plaintiff was to purchase the telemetry systems from datatel for resale and Plaintiff would receive a profit margin based upon a twenty percent discount from the datatel list price, plus a five percent handling fee.

From October 1997 to February 1998, the parties were involved in arranging for the sale of a datatel telemetry system to GE, referred to as the "9H System." Through the course of negotiations regarding the 9H System sale, the parties' negotiations began to break down. Plaintiff alleges that GE and datatel began negotiations without Plaintiff and that on September 1, 1998, datatel notified Plaintiff it was terminating the Agreement; Plaintiff claims this action constituted a wrongful termination and forms one basis on which it seeks relief. Defendants, in turn, respond by admitting that they terminated the agreement with Plaintiff, but that this termination was a result of breaches by Plaintiff, including its alleged failure to pro-

vide required letters of credit to GE to conclude the purchase of the 9H System.

Plaintiff alleges that based on the automatic renewal clause of the Agreement, and but for interference by GE, Plaintiff would still serve as the exclusive United States representative for datatel. It therefore claims to be entitled to its margin and handling fee on all datatel sales to United States customers after the termination of the Agreement in September 1998 to the present.[1] Plaintiff further contends that it is entitled to its margin and handling fee on any datatel sales to United States customers on projects that it helped design or support even if the sale was finalized after the Agreement had terminated. Specifically, Plaintiff also claims that it is entitled to margin and fees related to the sale and subsequent services of the "9H System" to GE and a later sale by datatel to Hamilton Standard, whom Plaintiff alleges was explicitly told by datatel to not contact Plaintiff. In its response, datatel admits supplying telemetry products to United States customers, but states that since the sales took place after the termination of the Agreement and none of the sales were originated, designed or supported by Plaintiff, Plaintiff is not entitled to the margins and fees it seeks.

## ANALYSIS

Rule 26(b)(1) allows, "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." This language is a result of the 2000 amendments to the Federal Rules. Prior to the amendment, the Rule allowed discovery of all matters "relevant to the *subject matter* of the action."[2] Now, only upon a showing of "good cause" may a court order discovery of matters relevant to the "subject matter." Finally, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and

(iii)." Fed.R.Civ.P. 26(b)(1). The limiting rule provides:

> [t]he frequency or extent of use of the discovery methods otherwise permitted . . . shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(2).

It is in accordance with the foregoing that Plaintiff's Motion to Compel is considered.

## A. Plaintiff's datatel Discovery Request

Plaintiff's Interrogatory Number 5 to datatel requests the "total gross income from the sales, providing service or providing maintenance of your telemetry systems, product and services (a) worldwide and (b) solely in the United States for each year from [September 1, 1998] to the present." In its response, datatel sets forth several objections, including "overbroad, unduly burdensome and vague and . . . not reasonably calculated to lead to the discovery of admissible evidence." Notwithstanding these objections, datatel identified the *sales* it made in the United States from February 1997 through November 1999.

In its complaint, Plaintiff alleges that it is entitled to damages resulting from sale and services made by datatel to its United States customers through the present. Based on this claim, it is clear that information regarding *worldwide* sales and services fall outside the scope of this action. Plaintiff's claim of

---

1. Through the deposition of a datatel witness in February 2002, Plaintiff indicates that datatel has made sales of its products in the United States in both 2000 and 2001.

2. Consideration of the 2000 Notes of the Advisory Committee sheds light on the purpose and expected effect of the change. The Notes state: "the amendment is designed to involve the court more actively in regulating the breadth of sweep-

ing or contentious discovery." *Cf. Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (discouraging "the time-honored cry of 'fishing expedition' " as an objection to discovery). The 2000 amendments implicitly seek to farm out the "fishing expeditions" previously allowed and serve as an attempt to reduce the broad discovery which has heretofore been afforded litigants in civil actions.

entitlement to margins and fees resulting from activities beyond the date of the termination of the Agreement (September 1, 1998) is not an issue presently before this Court. Therefore, given Plaintiff's claim that GE's interference was a contributing factor in the dissolution of the Agreement, the United States sales from September 1998 to the present is relevant. The information is neither overbroad, unduly burdensome, nor vague.

Therefore, Plaintiff's motion as to this Interrogatory is **granted in part**. datatel is compelled to provide the total gross income from the sales, providing service or providing maintenance of its telemetry systems, products and services in the United States from September 1, 1998 to the present.

## B. Plaintiff's GE Discovery Requests

■ Plaintiff's Interrogatory Number 5 to GE requests:

> [t]he total amount of expenses [it], alone or with others (including any industry group, PIWG or the OAI), has incurred in the purchase, procurement and/or maintenance of test equipment, accessories and related services used in the testing of turbo machinery for each year from 1996–present, and in [its] answer [to] include the specific amount of expenses incurred during the same years fort he following categories of equipment: (a) rakes and probes; (b) slip rings; (c) telemetry systems; and (d) field services.

In support of this interrogatory, Plaintiff refers to GE's response to Interrogatory Number 20, in which it claims to have "ceased purchasing field services from QAT because it was able to obtain substantially identical services from a lower cost provider." In its complaint, Plaintiff alleges that GE retaliated against it by shutting off orders for work in its field services division.[3] Plaintiff claims that as a result of a deposition taken of a GE employee, it has learned about certain "MD5 reports," "voucher reports," and "plots," which contain evidence regarding the expenses incurred by GE for field service work from 1993 to the present.

In its response, GE objects on the grounds of irrelevance, overbreadth, undue burden and vagueness. GE also contends that "it is elementary that interrogatories ... may not demand production of documents." GE Resp., p. 9. Finally, GE contends that it cannot provide the information Plaintiff has requested "because documents containing discoverable information do not exist," while claiming "nothing in the rules requires GE to manufacture documents to satisfy QAT's request for information." GE Resp., p. 10.

In light of Plaintiff's assertion of GE's retaliation and GE's subsequent defense that it was merely receiving "substantially identical services from a lower cost provider," the costs associated with the services are relevant in determining the credibility of GE's explanation. GE's statement that "it is elementary that interrogatories ... may not demand production of documents," though accurate, does not abrogate is obligation to respond to interrogatories which the Court has found relevant.

Although GE claims that the voucher reports no longer exist and that the MD5 reports and "plots" contain no discoverable information, it is nonetheless responsible to provide a complete response to the Interrogatory in whatever manner is feasible.[4] In its response, GE asserts that the information Plaintiff seeks do not exist: "such (field) expenses are internalized into project engineering costs. There is no document in GE's possession which would allow GE to break out these amounts for QAT." GE Resp., p.

3. In its response, GE claims that Plaintiff "has not alleged any claim related to loss of field services." GE Resp., p. 10. A review of the complaint, however, reveals Plaintiff's allegation that: "GE ... unfairly and inequitably exerted its economic power and position against QAT in the following manner: ... (c) GE withheld work being provided to GE by the QAT Field Services Division in Cincinnati; (d) while GE completely withdrew work from QAT's Field Services Division, GE, acting in bad faith, advised QAT to keep its Field Services Division engineers and service personnel on staff and to remain in readiness, all at a substantial expense to QAT." Compl. para. 52.

4. The Federal Rules provide parties with the option to produce documents, with sufficient specification, in response to interrogatories if it chooses. Fed.R.Civ.P. 33(d).

10. Contrary to GE's claim, Plaintiff claims that GE's witness, Mr. Dale Gronnauer, has testified that the MD5 reports *do* contain information relating to the expenses incurred by GE for the field services work that had previously been performed by Plaintiff.

Given the Court's finding of relevance and in light of the representations made by GE and Mr. Gronnauer, Plaintiff's motion as to this Interrogatory is **granted**. GE is compelled to state the total amount of expenses it has incurred in the purchase, procurement and/or maintenance of test equipment, accessories and related services used in the testing of turbo machinery from 1996 to the present.

■ Interrogatory Number 11 asks GE to identify all actual or prospective business transactions and a litany of documents related thereto between GE and datatel. GE objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. In its response, GE provides what it claims is "a detailed account of all actual and potential transactions between GE and datatel." GE Resp., p. 12. A review of the projects reveals that GE lists projects only for the time the parties worked pursuant to the Agreement. As previously noted, Plaintiff alleges that but for interference on the part of GE, datatel would not have terminated the Agreement in September 1998 and would necessarily have received a twenty percent margin and five percent handling fee. The Court has found the time period from 1998 to the present as relevant. GE is correct, however, in that "prospective business transactions" which have not resulted in sales constitute an overbroad and irrelevant request that could lead to a potentially limitless stream of transactions GE would have to respond to.

Therefore, as to this Interrogatory, Plaintiff's motion is **granted in part**. GE is compelled to provide all the completed transactions that it has conducted with datatel from October 1996 to the present and the documents which relate to them.

■ Request for Production Number 1 seeks:

any and all documents, including correspondence, internal notes and memoranda, that reference, describe or discuss (1) QAT; (2) datatel; (3) telemetry system procurement or manufacturing; (4) slip ring procurement or manufacturing; (5) procurement of field services; and/or (6) any facts or circumstances set forth in the complaint.

GE objects on the grounds that the request is "overbroad, unduly burdensome and vague and not reasonably tailored to lead to the discovery of admissible evidence." In support of Requests Numbers 1, 3, and 7, Plaintiff states: "[a]ll documents related to any and all sales between datatel and GE after termination of the Agreement were requested by and should have been produced." Pl.'s Mot., p. 8.

As it is written, the request seeks potentially voluminous materials without setting forth any restrictions or parameters for GE to follow. Because it deals with the subject matter of the action and not necessarily a claim or defense, the request falls into the category for which Rule 26(b) requires a showing of "good cause." In neither its motion nor accompanying memorandum does Plaintiff set forth an argument which would support such a finding. Therefore, for failing to show good cause, Plaintiff's Motion as to this Request is **denied**.

■ Plaintiff's Request to Produce Number 3 asks for "any and all correspondence by and between the parties, and/or their agents or representatives, to this action during the period 1995—present." Again GE objects on the grounds that the request is "vague, overbroad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." Without waiving its objections, however, GE referred Plaintiff to correspondences it provided with its initial disclosures made pursuant to Rule 26(a). As in the case of Request Number 1, the language of Plaintiff's request, absent some measure of specificity, could lead to a potentially limitless production. As noted above, Plaintiff has not submitted any argument regarding the relevance of the information it seeks in light of its claims. Neither does Plaintiff list the particular documents it requests, some of which may contain privileged materials. Additionally, GE has al-

ready produced documents consistent with its Rule 26(a) obligation. Therefore, for failure to show "good cause," Plaintiff's Motion as to this Request is **denied.**

■ Plaintiff's Request Number 7 asks for "any and all documents that reference, describe or discuss the E9H project and telemetry system referenced in the Complaint." GE objects on the grounds of overbreadth, vagueness and undue burden. In addition, GE claims that the information Plaintiff seeks is highly confidential and contains proprietary information. Further, GE states that the 9H project "was a huge undertaking, involving a myriad of components and actors bearing absolutely no relation to datatel, QAT or telemetry." GE certifies that it has "provided QAT with materials relevant to the claims and defenses of the parties in compliance with Rule 26(a) and provided numerous documents in response to QAT's requests on September 12, 2001." GE Resp., p. 14.

The 9H System sale is relevant to this cause of action for several reasons. First, it was the final negotiated transaction between the parties prior to the termination of the Agreement in September 1998. Second, Plaintiff has alleged in its complaint that were it not for GE's interference between datatel and Plaintiff, the Agreement would not have been terminated and Plaintiff would have received additional margins and fees. This interference allegedly began during the 9H System negotiations. Therefore, documents which discuss the project are also relevant. As the Request is written, however, GE is correct in that to provide all documents which relate to an international project which in only small measure relates to Plaintiff constitutes an undue burden upon it and requires a showing by Plaintiff of good cause before the Court should compel it. Plaintiff presents no argument in its motion or memorandum which warrants the breatdh of disclosure it seeks.

Therefore, Plaintiffs' Motion as to this Request is **granted in part.** GE is compelled

to respond, insofar as the Request seeks 9H System documents which pertain to the specific sale the parties attempted to negotiate in the fall of 1998 and the later field services which were provided for that system. The Request is relevant to Plaintiff's claim, does not constitute an undue burden and, therefore, GE is compelled to provide the responsive documents.

## C. Plaintiff's 30(b)(6) Notice of Deposition

■ On February 28, 2002, Plaintiff served a notice of a second Rule 30(b)(6) deposition on GE.[5] Plaintiff's first notice was served on February 5, 2002, and sought to depose on the following three issues: "(1) the decision to withhold payment to QAT 55 days past the payment terms of 45 days after receipt of invoice; (2) the decision to send the three 'Request for Payments' to QAT; and (3) the decision to include the first sentence of the last paragraph and the last sentence of the last paragraph in the [attached] letter." Pl.'s Ex. K. Plaintiff states that the issues its second notice seeks to discover "do not relate or pertain to the three issues covered in the initial 30(b)(6) deposition." Pl.'s Mot., p. 9. Further, Plaintiff claims that the need for the second notice did not arise "until after the [first 30(b)(6)] depositions ... in which it was revealed that there were additional projects between datatel and GE, both during and after the Agreement, that had not been previously revealed to QAT." *Id.*

Through this deposition, Plaintiffs seek testimony on the following subjects: (1) GE's purchase of all datatel products from October 1996 to the present; (2) All projects between GE and datatel from 1996 to the present including, but not limited to the project described in Exhibit 36 to the Warislohner deposition; (3) all compensation, monetary or otherwise paid by GE to datatel for all products from 1996 to the present; (4) authentication of the policy on procurement provided

**5.** Rule 30(b)(6) states, in pertinent part: "[a] party may in the party's notice and in a subpoena name as the deponent a public or private corporation ... and describe with reasonable particularity the matters on which examination is re- quested. In that event, the organization so named shall designate one or more officers, directors, or managing agents ... and may set forth ... the matters on which the person will testify."

by GE; and (5) "GE Sourcing Counsel." GE Resp., p. 16–17.

GE makes two principal arguments in objecting to the notice of deposition. First, GE claims that the notice is "in direct contravention of Rule 30 which requires leave of the court if 'the *person* to be examined already has been deposed in the case'" (emphasis added). GE Resp., p. 16. The second is a timing argument. GE claims: "QAT has had ample opportunity to inquire about each of these matters in earlier discovery," GE Resp., p. 17, and that "QAT has had over 10 months to inquire of GE and datatel witnesses about this document (Exhibit 36)."

GE cites *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189 (1st Cir.2001), in support of its argument that "a second 30(b)(6) notice or subpoena submitted without leave of court is invalid." GE Resp., p. 16. GE's reliance on *Ameristar* is misplaced. The First Circuit's holding that the district court had properly granted a protective order, rather than an interpretation of the rule was a predictable result of the standard of review:

> we will intervene in such matters [discovery] only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party (internal citations omitted) 244 F.3d at 191.

As such, it is properly read as applying only to the specific facts before the Massachusetts court. This court declines to read it for the proposition that leave of court is necessary every time a second 30(b)(6) deposition is sought.[6]

Rule 30(b)(6) depositions are different from depositions of individuals. That difference is confirmed by the Advisory Committee Notes to the 1993 amendments to the Federal Rules, which expressly state that for purposes of calculating the number of a depositions in a case, a 30(b)(6) deposition is separately counted as a single deposition, regardless of the number of witnesses designated. Further, there is no aspect of the Rules which either restricts a party to a single 30(b)(6) deposition or restricts the allotted time for taking a 30(b)(6) deposition.

Comparing the discovery topics listed in the notices, it is evident that they seek information relating to different subject areas. Additionally, the discovery topic, the sales of datatel products to GE since 1996, is found by the Court to be relevant and within the scope of discovery in this matter. Further, Plaintiff's proffered rationale for the second notice, newly-discovered information, would be sufficient for a finding of good cause under Rule 30. Finally, the notice was served within the discovery deadline of March 15, 2002. **(DE 28)**.

In its response, GE submits no prior deposition testimony which would support an argument that the information sought is in any way duplicative of the subject matter of the prior deposition. Finally, by sending its second notice of deposition within the discovery time period, QAT rendered GE's arguments that it could have served an earlier notice of deposition inapposite.

Therefore, Plaintiff's motion to compel a second 30(b)(6) deposition is granted. The parties are to conduct the deposition pursuant to the terms of Plaintiff's second notice, at a time convenient to the parties but no later than twenty (20) days from the entry of this Order.

## CONCLUSION

Having considered the motion and the pertinent parts of the record and being otherwise fully advised in the premises, it is

ORDERED and ADJUDGED that Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART. Defendants are ORDERED to serve their supplemented responses to the aforementioned interrogatories and requests to produce within thirty (30) days from the entry of this Order. Further, Plaintiff and Defendant GE are to conduct a second Rule 30(b)(6) deposition no

---

**6.** In *Ameristar,* the party seeking a second 30(b)(6) deposition did so nearly one full year after the first deposition and two weeks after the magistrate judge issued her findings, conclusions and recommendations in favor of granting a motion for partial summary judgement. *Id.*